# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

|  |  |
|---|---|
| TERRI LAWRENCE,<br><br>    Plaintiff,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY, a/k/a STATE FARM INSURANCE COMPANIES, and a/k/a STATE FARM INSURANCE, an Illinois corporation,<br><br>    Defendant. | No.  C24-4008-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

This matter is before me on a motion (Doc. 26) for summary judgment filed by defendant State Farm Fire and Casualty Company (State Farm).  Plaintiff Terri Lawrence has filed a resistance (Doc. 27) and State Farm has filed a reply (Doc. 28).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.  PROCEDURAL HISTORY

Lawrence filed a petition at law and demand for trial by jury in Iowa District Court for Woodbury County on January 11, 2024.  Doc. 1 at 1.  Count I asserts that State Farm breached an insurance contract.  Doc. 1-3 at 2.  Count II asserts that State Farm acted in bad faith by failing to pay benefits under that contract.  *Id.* at 3.  On February 9, 2024, State Farm removed the case to this court based on diversity jurisdiction under 28 U.S.C. § 1332.  Doc. 1 at 1.  Trial is set to begin September 8, 2025.

## III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there

2

is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## IV. RELEVANT FACTS

The following facts are undisputed for purposes of State Farm's motion, except when indicated otherwise.

Lawrence purchased residential property at 3719 Jones Street in Sioux City, Iowa (the Property), on November 10, 2021, and closed on the property around November 30, 2021. Doc. 28-1 at 1 ¶ 1. Before purchasing the Property, Bacon Creek Design inspected the Property and noted settlement of the home to the north, but further noted that the "house structure is sound." Doc. 28-1 at 2 ¶ 3. Prior to closing, State Farm issued Homeowners Policy No. 15-CH-Y450-1 (the Policy) to Lawrence and later reissued the

policy for the period of November 29, 2022, through November 29, 2023.[1]  Doc. 27 at 1 ¶ 2; Doc. 28-1 at 1 ¶ 2.

The Policy's insuring agreement contains several relevant provisions.  First, it provides the following:

### SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value.*

Doc. 27 at 10 ¶ 24.  Next, the Policy's coverage exclusions include, in part:

### SECTION I – LOSSES NOT INSURED

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

 \*     \*     \*

 c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

 \*     \*     \*

 (2) an awning, fence, pavement, patio, foundation (including slabs, Basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

---

[1] The parties agree that the Policy was in effect at the time of the events relevant to this lawsuit. *See* Doc. 28-1 at 4 ¶ 14.

4

\*　　\*　　\*

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

    (1) and is:

        (a) continuous;

        (b) repeating;

        (c) gradual;

        (d) intermittent;

        (e) slow; or

        (f) trickling; and

    (2) from a:

        \*　　\*　　\*

        (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

        \*　　\*　　\*

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

        \*　　\*　　\*

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

        \*　　\*　　\*

5

m. pressure from or presence of tree, shrub, or plant roots.

*Id.* at 11-12 ¶ 25. The Policy also contains a coverage exclusion that reads, in relevant part:

> 3. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from any natural or external forces, or occurs as a result of any combination of these:
>
>> a. **Ordinance or Law**, meaning enforcement of any ordinance or
>> law regulating the construction, repair, or demolition of a building structure or other structure.
>>
>> b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:
>>
>>> \*      \*      \*
>>
>>> (3) sinkhole or subsidence;
>>>
>>> (4) movement resulting from:
>>>
>>>> (a) improper compaction;
>>>>
>>>> (b) site selection;
>>>>
>>>> (c) natural resource extraction activities; or
>>>>
>>>> (d) excavation;

6

(5) erosion;

(6) pressure by surface or subsurface earth or fill; or

\*      \*      \*

c. Water, meaning:

\*      \*      \*

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

\*      \*      \*

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a building structure, sidewalk, driveway, swimming pool, or other structure[.]

*Id.* at 12-13 ¶ 26. Finally, the Policy contains the following coverage exclusion:

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault; b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

7

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance; of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or c. weather conditions.

*Id.* at 13-14 ¶ 27.

In December 2022, Lawrence was not consistently living at the Property, instead frequently staying with her parents due to their proximity to her work. Doc. 28-1 at 2 ¶ 5. Lawrence did not recall the last time she visited the Property prior to discovering the burst pipe at issue in this case but testified that it may have been January 1 or 2, 2023. Doc. 27-5 at 73. Upon leaving the Property on that occasion, Lawrence set the thermostat to approximately 55 degrees. Doc. 28-1 at 3 ¶ 7. On or about January 11, 2023, Lawrence received a call from the City of Sioux City, noting a large amount of water consumption, indicating a broken water pipe. *Id.* ¶ 8. After this notification, Lawrence visited the Property with a city inspector and witnessed a burst pipe shooting water into the basement. *Id.* ¶ 9. The water was then turned off. *Id.* at 4 ¶ 10.

According to the City of Sioux City Utilities, 168 CCF (centum cubic feet; equivalent to 125,673 gallons) of water was released into the home in the January billing cycle ending on January 6 (when Lawrence was not home), and an additional 90 CCF (equivalent to 67,325 gallons) of water was released in the February billing cycle starting January 7 (up until the time the water was shut off on January 11). *Id.* ¶ 11. On or about January 11, 2023, the Property was placarded as being unfit for human habitation by the Inspection Services Division of the City of Sioux City Iowa because of "major foundation and structural damage due to a burst water pipe." *Id.* ¶ 12. Prior to the pipe burst, Lawrence never observed water in the basement. *Id.* ¶ 13.

Lawrence called State Farm to discuss the burst pipe and how to make a claim in January and March 2023, but she did not submit a formal claim until May 8, 2023. Doc. 275-5 at 96-97; Doc. 27 at 1 ¶ 1. After submitting her claim, State Farm began contacting

8

Lawrence by automated message, letter and phone call. Doc. 27 at 2 ¶ 3. On May 12, 2023, State Farm claim adjuster Damon Polite contacted Lawrence to discuss her claim. *Id.* ¶ 4. According to Polite's claim notes, Lawrence told him that she had waited to file a claim after her initial calls with State Farm because she was unsure if the property was a total loss and her boyfriend, John Wakefield, was helping obtain estimates for repairs. *Id.* ¶ 5. On June 6, 2023, Lawrence submitted additional photos of the Property, which showed drywall cracks in multiple rooms. *Id.* at 3 ¶ 7. Lawrence also submitted documentation confirming that the Property had been condemned on January 11, 2023, due to structural issues. *Id.* ¶ 8. Finally, Polite's notes state that Lawrence submitted estimates from Dwyer Construction and Thrasher Foundation Repair, for $189,000 and $127,396.73, respectively, to repair the structural damage to the Property. *Id.*

State Farm estimated the structural damage to be over $150,000. *Id.* ¶ 9. On June 8, 2023, State Farm claim adjuster John Salvador reviewed the photos and did not believe that the large cracks were consistent with damage that would be caused by water released from a burst pipe. *Id.* at 3-4 ¶ 10. On June 9, 2023, State Farm claim adjuster Jacob Ison inspected the Property with Lawrence and Wakefield present. *Id.* at 4 ¶ 11. Ison's inspection showed cracks in the brick exterior on the front, right and rear of the Property. *Id.* Ison also noticed separated sections of driveway, cracks on the concrete landing by the exterior door and cracks in a block window. *Id.*

As for the interior of the Property, Ison noted cracks in the drywall on the floor and ceiling of every room in the upper main level except for the kitchen pantry. *Id.* at 5 ¶ 12. The basement showed observable cracks in the masonry walls and floor. *Id.* Lawrence had plugged one large crack in the basement's exterior wall with plastic bags in an apparent attempt to protect the Property from the elements. *Id.* Wood paneling in the basement did not show any indication of rot. Ison also inspected the broken pipe. *Id.* Lawrence told Ison they had shut off the water to the pipe but had not yet had a plumber repair it. *Id.*

State Farm engaged engineering firm MKA International, Inc. (MKA), to inspect the Property and determine the source and extent of the structural damage. *Id.* ¶ 13. On June 14, 2023, Landon Holder, a structural engineer employed by MKA, inspected the Property to "determine the cause and extent of distress that occurred on January 11, 2023, as a result of a water pipe failure within the home," including determining if a pipe failed and the cause of any pipe failure, identifying damage to the structural components resulting from a pipe failure, determining the cause of damage to interior and exterior finishes and providing conceptual repair recommendations. *Id.* at 5-6 ¶ 14. On June 20, 2023, Holder followed up with State Farm requesting additional information to complete the inspection report, including the wall stabilization report Lawrence received from the seller when she purchased the Property, any before and after loss pictures, and information about the amount of standing water in the basement of the Property when Plaintiff returned after the loss. *Id.* at 6 ¶ 15. During this conversation, Holder reported that the foundation movement at the Property was one of the most significant he had seen. *Id.* In Holder's preliminary opinion, however, there was no indication that the foundation movement was caused by a broken water pipe. *Id.*

On June 29, 2023, Holder provided State Farm with his Engineering Evaluation Report. *Id.* ¶ 16. The report based its findings on the June 14, 2023, site visit, review of photographs of the Property from 2021 to 2023, provided documents, and discussions with Plaintiff. *Id.* The report contained the following description:

> The observed structural and non-structural distress of the building is consistent with foundation movement. Foundation movement of the building appears to have occurred over an extended period of time (e.g. several years or more) and appears to be ongoing. The distress observed was widespread and not concentrated to the area around the reported water leak in the basement.
>
> Water leakage in the basement could exacerbate ongoing foundation movement if the soil adjacent to and below the foundation is saturated, particularly if loess soils are present. Based on the distress observed and the information provided by the homeowner, it appears a water leak

10

contributed to the distress of the exterior walls along the west building elevation. Additional investigation would be required to try to better determine to what extent a water leak may have contributed to foundation movement.

*Id.* at 7 ¶ 17.

The report further identified other water sources that may have contributed to previous and ongoing foundation movement, including that the driveway and front yard slope toward, rather than away from, the Property, allowing surface runoff from the driveway to move through the crack in the garage between the slab on the ground driveway. *Id.* at 8 ¶ 15. In addition, Holder noted that the concrete drainage channel on the Property's north side ends at the retaining wall at the Property's northwest corner, allowing water to accumu1ate within the retained fill. *Id.* Holder stated that he did not see interior or exterior drain tile on the Property to help drain water away from the foundation walls. *Id.* Holder also saw vegetation around the Property's exterior, including a tree adjacent to the foundation on the west building elevation and opined that this tree, combined with a lack of grading, allows for water to accumulate and saturate the ground. *Id.*

Holder concluded that accumulation of ground water on the exterior side of the Property's foundation walls, known as hydrostatic pressure, appeared to contribute to "distress" at the north end of the Property. *Id.* at 8-9 ¶ 19. He observed soil staining at cracked mortar joints and soil deposits at the base of the north interior block wall, which indicated "water infiltration from the exterior to the interior" of the Property. *Id.* Holder associated the horizontal cracks in the north interior block wall and the wall's inward bulging with "distress due to hydrostatic pressure behind the wall." *Id.* Lateral movement of the west wall at the northwest corner of the Property appeared to be due to "hydrostatic pressure based on the relative displacement between the brick above and below the top of the retaining wall." *Id.*

11

On July 13, 2023, State Farm employees Rory Hansen and Cindy Speed determined that the loss was specifically excluded by several provisions of the Policy's Section 1—Losses Not Insured of the Policy. *Id.* at 9 ¶ 20. According to Speed's claim notes, she verbally notified Lawrence that the claim was not covered by the Policy. *Id.* at 10 ¶ 21. Speed then followed up with a formal denial letter on July 13, 2023. *Id.* ¶ 22. The denial letter stated: "While your policy covers your property for various types of loss, there is no coverage for the foundation damages causing settling and cracking of interior and exterior components of the housedue [sic.] to the following policy language" and cited the Policy's earth movement exclusion, among other provisions. *Id.* ¶ 23; Doc. 26-7 at 10.

On or about April 2, 2024, Bacon Creek Design conducted an inspection of the Property, and resulting damage from the burst water pipe. The inspection report provided:

> We previously performed evaluations of this property on November 9, 2015 and October 4, 2021…

> During these previous walkthroughs there was evidence of settlement in the home's exterior brick facade and interior gypsum wall board.

> It is visually obvious the home has moved substantially since our last walkthrough on October 4, 2021. During the walkthrough on April 2, 2024 the owner's representative discussed a split pipe located just North of the basement door on the interior of the West wall. The soft copper pipe feeds an exterior hose bibb, and was split approximately one inch. According to the owner's representative, some 200,000 plus gallons of water was released before it was discovered.

> Infiltration of water around and below the home's foundations caused disintegration of the loess soils supporting the home's foundation.

> Loess disintegration is defined as the process of loess soil softening and dispersing upon water content. Disintegration by definition is losing cohesion or strength.

When the soil's strength was lost, it allowed the home's foundations to settle.

Doc. 28-1 at 5 ¶ 15.

On or about June 10, 2024, Christopher Wortmann, PE, of Wortmann Engineering inspected the Property. Upon inspection, Wortmann concluded the following:

> When the water pipe in the home's utility room burst, the water flowed out and percolated through the various cracks and gaps normally present in the home's foundation walls and floor. This water carried the highly mobile loess soils out from under the home floor slab and rear foundation, carrying it to the rear lower tier of the backyard. The loss of soil under the floor slab and footing, moved by water from the water escaping inside the home, resulted in the quick and dramatic settlement of the home, as observed.
>
> This new movement is markedly different from the previously observed settlement noted in the BCD [Bacon Creek Design] reports. While the older settlement was notably slow and gradual and did not affect the home's structural integrity, this new movement occurred over a very short period when the water escaped into the home and caused the structure to become unstable and unfit for occupancy.
>
> In NWE's professional engineering opinion, the observed recent settlement of the home was caused by water escaping a water line inside the home in January 2023, causing significant damage to the home's structure. To restore the structural integrity of the home, it is NWE's opinion that most of the home's foundation system needs to be replaced, the home's structural frame straightened and reinforced, and the exterior brick fascia removed and replaced.

*Id.* at 5-6 ¶ 16.

Lawrence received proposals to repair the damage from Dwyer Construction, Groundworks Omaha, and Thrasher, Inc. *Id.* at 6 ¶ 17. To date, State Farm has not paid for any damage to the Property because it concluded that the loss was not covered by the Policy. *Id.* at 7 ¶ 18.

13

# V. ANALYSIS

## A. Count I – Breach of Contract

State Farm seeks summary judgment on the breach of contract claim, arguing that it properly denied coverage under the Policy pursuant to an express coverage exclusion. Doc. 26-2 at 11-13.

### 1. Standards

To prevail on a breach of contract claim under Iowa law,[2] a plaintiff must prove:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)). A party breaches a contract when, without legal excuse, the party fails to perform any promise that forms a whole or a part of the contract. *Id.* (citing *Magnusson Agency v. Public Entity Nat'l Co. Midwest*, 560 N.W.2d 20, 27 (Iowa 1997)).

Because "insurance policies are contracts between the insurer and insured, [they] must be interpreted like other contracts, the objects being to ascertain the intent of the parties." *Talen v. Employers Mut. Cas. Co.*, 703 N.W.2d 395, 407 (Iowa 2005). "If the language of the policy is unambiguous, . . . that intent is determined by what the policy itself says." *Monroe County v. International Ins. Co.*, 609 N.W.2d 522, 525 (Iowa 2000). "An ambiguity exists when, after application of our relevant rules of interpretation, a genuine uncertainty results as to which of two or more meanings is proper." *Am. Fam. Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 576 (Iowa 2004), *amended on denial of reh'g* (May 6, 2004). "When two reasonable interpretations exist,

---

[2] Neither party contends that the law of any other state applies in this diversity action.

14

the policy is construed most favorably to the insured." *Id.* However, courts "will not give a strained or unnatural reading to the words of the policy to create ambiguity where there is none." *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 99 (Iowa 1995), *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000).

The party claiming entitlement to coverage under the policy must prove compliance with its terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Henschel v. Hawkeye–Security Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *Henderson v. Hawkeye–Security Co.*, 106 N.W.2d 86, 91 (Iowa 1960). The party claiming coverage may meet this burden of proof by showing: (1) substantial compliance with the condition precedent; (2) the failure to comply was excused or waived; or (3) the failure to comply was not prejudicial to the insurer. *Am. Guar.*, 467 N.W.2d at 228; *Henderson*, 106 N.W.2d at 92. Under Iowa law, waiver is "the intentional relinquishment of a known right." *Huisman v. Miedema*, 644 N.W.2d 321, 324 (Iowa 2002) (quoting *State v. Hallum*, 606 N.W.2d 351, 354 (Iowa 2000)). Further, an insured's violation of a condition precedent is presumed to be prejudicial to the insurer. *Met–Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 658 (Iowa 1994); *Am. Guar.*, 467 N.W.2d at 228. However, the insured may rebut the presumption if it shows the lack of prejudice by satisfactory evidence. *Met–Coil*, 524 N.W.2d at 658; *Western Mut. Ins. Co. v. Baldwin*, 137 N.W.2d 918, 925 (Iowa 1965).

### 2. Discussion

The primary issue is whether the earth movement exclusion in the Policy applies to bar coverage if water released from a burst pipe caused the earth movement and

15

subsequent settlement of the Property.[3]  State Farm argues that the Policy contains an unambiguous anti-concurrent clause that excludes losses from sources like water and earth movement.  Doc. 28 at 1.  Lawrence counters that the Policy does not unambiguously exclude damage from a burst water pipe, and that the Policy easily could have included more explicit language excluding such damage.  Doc. 27-8 at 12-16.

The Iowa Supreme Court has not addressed the applicability of earth movement exclusions in burst pipe cases.  Thus, as a federal court sitting in diversity, I must "predict, to the best of [my] ability, how that Court would rule."  *Salier v. Walmart, Inc.*, 76 F.4th 796, 801 (8th Cir. 2023).  Both parties point to cases that have addressed similar situations, with opposite results.  For example, Lawrence discusses *Espedito Realty, LLC v. National Fire Ins. Co. of Hartford,* 849 F. Supp. 2d 179 (D. Mass. 2012).  In that case, the court held that an earth movement exclusion in a business owner's insurance policy that excluded coverage for damage from earth sinking, rising, or shifting, soil conditions and "action of water under the ground surface," did not preclude coverage for a warehouse floor that sank due to a large release of water from a burst pipe.  *Id.* at 183-85 (discussing *Powell v. Liberty Mut. Fire Ins. Co.,* 252 P. 3d 668 (2011)).  The court expressed disagreement with cases that applied earth movement exclusions under similar circumstances, writing:

> It is true that some non-binding authority appears to support the strict rule that Defendant argues for, excluding coverage whenever "earth movement" is involved in the loss in any way. *See, e.g., Alamia v. Nationwide Mut. Fire Ins. Co.,* 495 F. Supp. 2d 362, 368 (S.D.N.Y. 2007) (citing cases in support of this position). Even these cases, however, generally involve water flowing underground and damage occurring over a period of time.

---

[3] Viewing the evidence in the light most favorable to Lawrence as the non-moving party, there is sufficient evidence for a jury to find that the settlement at issue was caused by the burst pipe. Lawrence submitted evidence from two separate inspections, conducted by Bacon Creek Design and Wortmann Engineering.  Both concluded that water from the burst pipe caused disintegration of the loess soil beneath the home's foundation which caused settlement.  Doc. 28-1 at 5-6 ¶¶ 15,16.  While State Farm submitted contrary evidence, it is not my role at the summary judgment stage to weigh these expert opinions against one another.

Accepting authorities like *Alamia* as essentially on all fours with this case, the court simply finds them unpersuasive; the considerable contrary authority is much more convincing. The unavoidable fact is that pipes burst rather frequently. It is a rare property owner who has not dealt with the problem, or at least suffered anxiety over the possibility, and it is hardly intuitive that an "earth movement" exclusion would bar coverage for the homely situation where a pipe bursts and a floor sinks as a result. No objectively reasonable insured reading the policy would think so, especially when the only reference to the impact of water is to "water flowing underground." If the policy truly intended to cover this commonly recurring situation, it should have said so.

*Espedito,* 849 F. Supp. 2d at 185.

By contrast, many courts have reached the opposite conclusion. For example, in *Alamia v. Nationwide Mut. Fire Ins. Co.,* 495 F. Supp. 2d 362 (S.D.N.Y. 2007), the court analyzed an earth movement exclusion which precluded coverage for any loss resulting "directly or indirectly" from "earth movement due to natural or unnatural causes" which included mine subsidence, earthquake, landslide, mudslide, earth shifting, rising or sinking, even if "another peril or event contributed concurrently or in any sequence to cause the loss." *Id.* at 367. In analyzing whether the earth movement exclusion applied even if the earth movement was caused by a burst pipe, the court wrote:

The next issue is whether the exclusion applies to the damage even though, as plaintiffs' expert maintains, the "earth movement" was caused by water leaking from a broken pipe. The only reasonable reading of the Policy leads us to conclude that it does. The "earth movement" clause is preceded by what is commonly referred to as an "anti-concurrent" clause, which excludes coverage for damage caused by an excluded peril even when covered perils also contribute to the damage. *See ABI Asset Corp. v. Twin City Fire Ins. Co.,* No. 96 CIV.2067, 1997 WL 724568, at *2 (S.D.N.Y. Nov. 18, 1997) ("New York courts have interpreted similar clauses to mean that where a loss results from multiple contributing causes, coverage is excluded if the insurer can demonstrate that any of the concurrent or contributing causes of loss are excluded by the policy.") (emphasis in original); *Kula,* 212 A.D.2d at 21, 628 N.Y.S.2d 988 (by virtue of an anti-concurrent provision, no coverage for damages resulting from earth movement even though the movement was caused by a covered peril).

17

> Accordingly, because "earth movement" was at least a contributing cause of the damage (and clearly a major one), plaintiffs are not entitled to coverage under the Policy.

*Alamia,* 495 F. Supp. 2d at 368.

A significant number of other courts have adopted *Alamia* reasoning. *See Davis-Travis v. State Farm Fire & Cas. Co.,* 336 Fed. Appx. 770, 774 (10th Cir. 2009) ("The record is clear that the earth supporting the slab expanded and contracted, as a result of water, from whatever the source, and caused settlement damage. Coverage for this damage was unambiguously excluded by the earth movement clause."); *Olson v. State Farm Fire and Cas. Co.,* 97 F.3d 1460, 1996 WL 498920, at *2 (9th Cir. 1996) (unpublished table opinion) (applying an earth movement exclusion to preclude coverage when earth movement was caused by a leaking pipe); *Armstrong v. State Farm Fire and Casualty Company,* Civil Action No. 22-cv-02906, 2024 WL 1195325, at *5 (D. Colo., Mar. 20, 2024) ("Under the clear terms of the State Farm Policy, State Farm is not required to compensate Mr. Armstrong for damage caused by the movement of the earth, regardless of what caused the earth to move."); *Kunce v. State Farm Fire and Casualty Company,* No. 18-06046-CV, 2019 WL 5653966, at *8 (W.D. Mo. 2019) ("In this case the broken pipe underneath the Kunces' home caused a large amount of water to be released. Both of the parties' experts agree that the release of the water caused the soil to become saturated, which caused it to weaken, resulting in a settling of the foundation, which caused damage to the home. A plain, ordinary understanding of the language of the exclusion clearly shows that the Shifting/Earth Movement exclusion applies to exclude coverage under the policy."). Importantly, several of these cases applied earth movement exclusions to earth movement exclusion language stating that earth movement occurs according to the terms of a policy regardless of whether this movement is combined with water or not, which mirrors the language in the Policy. *See, e.g., Kunce,* 2019 WL 5653966, at *8 ("The policy even states that the term 'Earth Movement' means the

18

'sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not.'"); Doc. 27 at 12-13 ¶ 26.

Finally, the Iowa Court of Appeals addressed the application of an earth movement exclusion when combined with a burst pipe in *Steeve v. IMT Insurance Company,* 926 N.W. 2d 561, 2018 WL 6338611 (Iowa App. 2018) (unpublished). In *Steeve,* the court applied an earth movement exclusion, writing:

> The district court found, and we agree, that the "policy provides that losses due to earth movement are excluded, '*regardless of any other cause or event contributing concurrently or in any sequence to the loss*.'" The district court concluded it was immaterial whether the earth movement was a result of the broken pipe or the rainfall or both since the cause of the earth movement is not the critical issue under the policy language. In order to survive summary judgment, the Steeves had the burden to establish the possibility of a different, nonexcluded cause for the damages to their home. *See Bradshaw v. Wakonda Club,* 476 N.W.2d 743, 745 (Iowa 1991) ("The party resisting a motion for summary judgment must set forth specific facts showing there is a genuine issue for trial."). They failed to do so.

> Because the cause of the earth movement is not a necessary consideration in determining whether the exclusion applied and because the Steeves failed to provide evidence of any other cause of the damages to their home, IMT is entitled to summary judgment on the breach-of-contract claim.

*Steeve,* 2018 WL 6338611, at *3 (emphasis in original).

Based on the express Policy language in this case, I find the latter line of cases more persuasive for two reasons. First, *Espedito* is distinguishable. In that case, "the only reference to the impact of water [was] to water flowing underground. *Espedito,* 849 F. Supp. 2d at 185. This is in marked contrast to the Policy, which more generally references the impact of water in its earth movement exclusion, stating that the exclusion applies "all regardless of whether combined with water[.]" Doc. 27 at 12-13 ¶ 26. This language more closely hews to the earth movement exclusions that have been applied by other courts. *See e.g., Kunce,* 2019 WL 5653966, at *8.

19

Second, while there is no binding Iowa Supreme Court authority, *Steeve* provides some evidence that Iowa courts are likely to apply the earth movement exclusion strictly to preclude coverage in the context of burst pipes. *See Steeve,* 2018 WL 6338611, at * 3 (agreeing with the trial court's determination that "it was immaterial whether the earth movement was a result of the broken pipe or the rainfall or both since the cause of the earth movement is not the critical issue under the policy language."). Critically, the earth movement exclusion at issue in *Steeve* did not even mention water. *Id.* As such, I predict that the Iowa Supreme Court would enforce the Policy's earth movement exclusion with its explicit reference to water causing earth movement. Doc. 27 at 12-13 ¶ 26.

I therefore find that under Iowa law, the Policy's earth movement exclusion expressly precludes coverage in this case, even construing the facts in the light most favorable to Lawrence and assuming that the burst pipe was the sole cause of the Property's earth movement. The earth movement exclusion states that earth movement means "the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water[.]" Doc. 27 at 12-13 ¶ 26. This language does not result in "a genuine uncertainty … as to which of two or more meanings is proper." *Petersen,* 679 N.W. 2d at 576. Rather, like in *Kunce,* "[a] plain ordinary understanding of the language of the exclusion clearly shows" that a burst pipe releasing water and causing earth movement fits squarely into the Policy's language precluding coverage for earth movement "regardless of whether combined with water[.]" *Kunce,* 2019 WL 5653966, at *8; Doc. 27 at 12-13 ¶ 26.

Because the Policy's earth movement exclusion unambiguously applies to preclude coverage, Lawrence cannot show that State Farm breached the Policy "in some particular way" and her breach of contract claim fails as a matter of law. *Molo Oil,* 578 N.W.2d at 224. State Farm is entitled to summary judgment on Count I.

20

**B.      Count II – Bad Faith**

*1.      Standards*

To prevail on a first party bad faith insurance claim pursuant to Iowa law, a plaintiff must show "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *Thorton v. American Interstate Insurance Company*, 897 N.W.2d 445, 461-62 (Iowa 2017) (quoting *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002)). The first element is objective and the second element is subjective. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

With regard to the first element, "[a] reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Bellville*, 702 N.W.2d at 473. This issue may be decided as a matter of law. *Id.* A claim is "fairly debatable when it is open to dispute on any logical basis . . . . Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable." *Bellville*, 702 N.W.2d at 473. Because the first element's focus is on whether there was a debatable issue, it is not dispositive if the insurer's position was ultimately incorrect. *Id.* Instead, the dispositive question is whether a fairly debatable claim existed. *Id.* When "an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law." *Id.* at 474 (emphasis in original). Courts do not weigh the evidence an insurance company considered; they determine simply whether evidence existed to justify the company's denial of the policyholder's claim. *Id.*

Even if a policyholder shows that the insurance company lacked an objective reasonable basis to deny the claim, bad faith liability attaches only if the insurance company "knew or should have known that the basis for denying its insured's claim was unreasonable." *Id.* "An insurer's negligent or sub-par investigation or evaluation of a claim is relevant to the fact finder's determination of whether the insurer should have known its denial lacked a reasonable basis." *Id.* However, an improper investigation

21

alone "is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." *Id.* (cleaned up).


### *2.* *Discussion*

As discussed above, State Farm had a reasonable basis for denying Lawrence's claim, namely the Policy's earth movement exclusion. As such, Lawrence cannot prove that State Farm "had no reasonable basis for denying benefits under the policy" and her bad faith claim fails as a matter of law. State Farm is entitled to summary judgment as to Count II.


## *VI.* *CONCLUSION*

For the reasons set forth herein:

1.    State Farm's motion (Doc. 26) for summary judgment is **granted in its entirety**.

2.    This action is hereby **dismissed** and judgment **shall enter** in favor of State Farm and against plaintiffs.

3.    The trial of this case, currently scheduled to begin September 8, 2025, is hereby **cancelled**.

4.    The Clerk of Court shall **close this case**.


**IT IS SO ORDERED** this 25th day of June, 2025.

_____
Leonard T. Strand
United States District Judge

22